Good morning, Your Honors. Mr. Rosted, may it please the Court, I am Dan Wilson, representing the defendant and appellant in this case, whom I also represented at the trial court level. There are two issues presented on the appeal. First, whether or not the sentencing court abused its discretion, and whether its finding that Dale Johnson should be held accountable for methamphetamine that he never received, is supported by a preponderance of the evidence. The objection that I make now, and the argument that I make now, is one that I made in the district court. At the time the district court answered my objection that Mr. Johnson not be held accountable for methamphetamine that was, in fact, removed from the package before it ever came to his house, the district court's reply was the jury addressed that question, and they determined that he knew the package was coming. And on that basis, the district court attributed the approximately 81 grams that Mr. Johnson never received. But why isn't that the right answer, even though he didn't receive it, at least at the 80-plus grams by acquiring the package? And the fact that someone had substituted a non-drug, non-illegal substance for part of it really didn't affect his state of mind or his intent or what he tried to accomplish vis-a-vis the drugs. I respectfully disagree, Your Honor, and I'm very glad that you brought up the point, because I think it highlights one of the crux points of my argument. That is, taking these facts in the light most favorable of the government, I think I have to assume and concede, at least for purposes of argument, that Mr. Johnson knew the package was coming. What's not apparent from the record and what appears nowhere in the record is that he knew the contents of the package specifically or the weight of the package that was going to come. As far as the content, aren't you bound by the finding that he intentionally or knowingly received this? I think what I'm bound by is a finding that he knowingly possessed and the jury found, determined that he intended to distribute it. But I think one of the questions posed by the jury is most telling in this respect. It's often difficult to divine what a jury is thinking. But in this case, they told us. They posed a question very late in the deliberations that said, Your Honor, does intent to distribute include the intent to use or share, in parentheses, with family or friends? And that, I believe, was in direct response to what was the defense in my argument in the closing in this case, which is that there's no evidence that the amount that Mr. Johnson possessed on the day in question, the day of his arrest, the day of his arrest, was the amount that would be distributable or saleable. It was amounting to 2.3 grams and a fairly low quality, 20% purity. But that aside, I'd like to proceed into my argument regarding the sufficiency of the evidence because I think it dovetails with the question that was raised about the sentencing and attributing the full amount to Mr. Johnson. There are really three elements to the offense here. Knowing possession with intent to distribute. There's the knowledge element. Of course, there's the possession element. And the third element is the intent. As I review the record, as I see the evidence, in a light most favorable to the government, there are three points. And this is what the government argues. Three points in time when it argues that Mr. Johnson could be said to be guilty of the offense. The first point in time would be those 11 minutes or so where Mr. Johnson actually had in his hands, in his house, the package containing a baggie with 2.3 grams of methamphetamine and about 81 grams or so of another substance, vitamin B12, which had a different color. In this case, the methamphetamine was sort of brownish in two clumps. The vitamin B12 was white, kind of appearing like powdered sugar. And in this case, during those 11 minutes, even though Mr. Johnson had in his dresser an electronic scale that he himself testified had been used on prior occasions to weigh out drugs, he said that it belonged to another person, be that as it may, despite the fact that there were baggies, small baggies that are commonly used to package drugs, during those 11 minutes that he actually possessed the drug, there's no indication that he took any affirmative step towards packaging it or delivering it. And what's more important to me to say is that he had a baggie. And he immediately began packaging and delivering like mad to be convicted of that? I mean, suppose he wanted to go take a nap. I mean, what difference does that make? I think the difference – I'm sorry, Your Honor, for interrupting. I think the difference that it makes is that the quantity itself is what's at issue, given that there was only 2.3 grams of methamphetamine in his possession. And although the Ninth Circuit has held repeatedly that the amount of the quantity in possession can be the basis of an inference that there was an intent to distribute. But there was other evidence from which that inference could be drawn, as you mentioned, the scales and the baggies and so forth, and a prior conviction, although I can't recall now whether that was in evidence or not. It was in evidence. The prior conviction was a similar crime. In this case – I'm sorry. Go ahead. In this instance, the 2.3 grams, as the investigating officer from Montana testified, is most commonly associated with a user. The term 8-ball comes to mind, and that's one that the investigating officer used. It's about 3 grams. Also, there was evidence that this came from a certain – I can't remember the woman's name – but it came from a woman in California, bought from before, and he sent two payments to her, which would indicate larger quantities, I think, if I remember the record, larger discrete value than for personal use. Am I misinterpreting the record? The person that you're thinking of was named Jody Bly, and Mr. Johnson said that he thought that he had been set up. He wasn't expecting this package, but Jody Bly and he had – But he called and wanted his birthday present from the FedEx, and it came with a big happy birthday on it. And that's another interesting point that I'll address after I – I think I can finish your concerns about this money to Jody Bly. There's no evidence as to – to contradict Mr. Johnson's characterization that the money had been sent months and months before. But money had been sent, right? Extra 800, is that right? There were two amounts of $800 months before. The evidence was, in the case supported by both the deputy and Mr. Johnson testimony, that the amount that he received would have paid for the amount that he did receive. I had a question about what – on the amount of drugs. Assuming that there's evidence to convict, what would be the difference in his sentence between possessing the two grams and possessing the 80-plus grams in view of his prior conviction? Would it have made any difference to his ultimate sentence? Yes, it would have been a substantial difference. He was ultimately sentenced to 76 months. I believe the point total was approximately 26, and had the amount that was attributed to him that was ultimately removed before he got the package not attributed to him, the number of points would have been 14. And I – forgive me, Your Honor, I don't recall what that range would have been, but it occurs to me that it was between two and three years in the guideline range. With the prior conviction. Yes, that's what I understand. But I could be incorrect on that. I think what's most important to note that even though Mr. Johnson had the paraphernalia to weigh, package and so forth, he did testify, and I don't believe that anybody could effectively rebut it, that he is a committed and avowed drug user, methamphetamine user. On pay and owe sheets, which would go differently from his drug use, the pay and owe sheets are typically, and it's classic, that those are part of a seller's paraphernalia to determine who owes him money. I think you're right, Your Honor. And if he had received approximately 83 grams that day instead of 2.3, or maybe even if he'd received 20 or 30 or maybe even 10 grams, then we could infer from the quantity itself that he had the intent to distribute it. But given that it was 2.3. It's a coincidence that he didn't. In other words, if the agents hadn't taken anything out of the stuffed doggie or whatever it was, he gets the whole 85 grams and your argument's gone. So don't we have to assume that he knew the package was coming, he called and said he wanted his birthday present. The birthday present shows up, it's got 85 grams of something in it. It would have been math if the agents hadn't removed it. Don't you have to assume he intended to possess what that package was? I don't think we do, Your Honor, and I appreciate your question, though, because what we have in this case is no evidence on the front end of this transaction, unlike the Valentine case cited by the government, no evidence that Mr. Johnson was aware of that the package was coming before it was actually in the possession of FedEx. It was worth my birthday present. Well, this call, Your Honor, to FedEx came on the day it was delivered. The package was actually in the possession of law enforcement the day before, and as I was saying, there was no evidence to show that Mr. Johnson made a call from his house to Southern California in the day or the days before. I see that my time is up, Your Honor. Thank you very much, unless the Court has further questions. No, thank you. Thank you, Your Honor. We'll take up some of your time with questions, though, so you have a minute or so for rebuttal when the time arrives. Thank you very much. Rostran. Thank you, Your Honor. I would refer the Court. I think the brief is certainly legally and factually accurate to give you a good sense of the government's position on these issues. The – I think what the defendant fails to do in his argument, both below and on appeal, is adhere to the maximum that – or maxim that the inferences are to be weighed in favor of the verdict and in favor of the judgment. I don't have any problem just for my own part with the sufficiency of the evidence, but it strikes me that maybe what he did was attempt to possess the entire amount rather than actually possess it. It seems to fit, for me, more easily into that construct. And if that is so, what difference does it make if it should have been called an attempt rather than a completed possession? It would have been charged, obviously, differently, Your Honor. And I don't disagree that if it had been me, that's one of the things that it would have considered because – but Mr. Van de Wettering took the position, and I think it's legally sufficient to say that where he's exercising control over the package, that the attempt merges with the actual possession as long as he can control its course, he's paid for the drugs or has an agreement to pay for the drugs. I think that he is exercising constructive possession and not wasting his period. Let's assume that that's not the case, just for the sake of my follow-up question. So let's assume that it should have been charged as actual possession of 2.3 and attempted possession of another 70 plus or 80 plus. That's not an argument that was made by the defendant, so we would – that specific argument. So assuming we get over that hurdle, what difference would that have made to the defense if he had been convicted of actual possession plus attempted possession with this prior record? Would it have made any difference at all? I don't think so, Your Honor, because it certainly would have been brought in as relevant conduct. I mean, even if you hadn't charged the attempt, and even if they charged only the 2.7, the fact that there was 80-some other grams out there that was part of the same shipment would clearly have been relevant conduct, would have raised your drug amount anyway. Well, that's, I guess, what I was struggling with to ask Mr. Wilson. I didn't do very darkly, I guess. But so even assuming that there was a mistake in the way the indictment was brought, because of what the jury necessarily found about his intention, would it have made any difference? It wouldn't have mattered at sentencing, Your Honor. Even if they found the possession of 2.8, like I say, relevant conduct would have brought it in. A friend of mine down in Billings sometimes says that's the problem with the Federal system. All you have to do is nick them. And that's the, what he meant was that you can get your client off on all sorts of charges, and then it comes all back in as relevant conduct at sentencing. And that certainly would have been the case here. Well, it would have been more than that if he'd been convicted of attempt. I mean, it would have been more than relevant. It would have been another thing. Oh, certainly. It would have been the substantive charge. Right. But in all of those things, it would have come out to the same. Even interestingly enough, if he'd been acquitted of attempt and convicted of possession, under the current case law, acquitted conduct can be brought in if there's a sufficient basis for it. If the Court has no more questions, I thank you for your time. I don't believe so. You may have a minute for rebuttal if you'd like it. Thank you, Your Honor. I think where I have to part company with my colleague here is whether there was sufficient evidence to say that he, Mr. Johnson, knew of this 81 1⁄2 grams or so, and whether it was foreseeable. We know that he knew there was a package coming. We know he was given a tracking number. We know he called up and said, where's my present? Or where's my birthday present? What we don't know is the contents of that conversation. We don't know if this was a question from Mr. Johnson that said, what's coming? And the guy said, well, I think you'll be happy with it. Or that whether Mr. Johnson was told, well, it's a birthday present surprise. Those are things that we just have to speculate about. It's certainly not in the record. And that's why I think that the argument I make is substantial, that to attribute to him the full amount when we can't show that it was foreseeable, he was going to receive that actual amount as error. Thank you very much, Your Honor. Thank you, counsel. The case just argued is submitted, and we appreciate the arguments of both of you. And for this morning's session, we will stand adjourned.
judges: Brunetti, T.G. Nelson, Graber